John DOE, Class, Petitioners,

v.

Hon. John W. POTTER, Special Judge Boone Circuit Court, Respondent

and

Roman Catholic Diocese of Covington, Kentucky, Bishop Roger J. Foys, William R. Burleigh, Thomas D. Lambros, and Commonwealth of Kentucky, Real Parties in Interest.

No. 2006–CA–001873–OA.

Court of Appeals of Kentucky.

Oct. 27, 2006.

Stanley M. Chesley, Robert A. Steinberg, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH, Michael J. O'Hara, O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, KY, C. Alex Rose, Weber & Rose, P.S.C., Louisville, KY, for petitioners.

Senior Judge, John W. Potter, Special Judge, Boone Circuit Court, for respondent, Judge.

Gregory D. Stumbo, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for the commonwealth as real party in interest.

Before: ABRAMSON and HENRY, Judges; KNOPF,[1] Senior Judge.

### OPINION AND ORDER

ABRAMSON, Judge.

Following the settlement of a class action against the Roman Catholic Diocese of Covington in which an $84 million fund was established to compensate approximately 350 victims of child sexual abuse, Senior Judge John W. Potter ordered the

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

court-appointed Special Master overseeing claims processing to provide detailed reports to the appropriate Commonwealth Attorneys regarding the abusers, the abuse and the victims. Having concluded that the Respondent, Senior Judge Potter, was acting within his jurisdiction and further that no irreparable harm will result from the reporting of the names of the living abusers and the details and scope of their abuse, we deny the writ sought by Petitioners, the John Doe Class (the "Class"), to the extent that it challenges the judge's authority to order such reports. However, because wholesale disclosure of the names and addresses of the victims could cause irreparable harm to some members of the Class and such disclosures may ultimately be unnecessary for protection of the public interest, we grant the writ to the extent that the trial court's order requires victims' names and contact information to be released to prosecutors at the time of the reports. We further find no compelling public interest in the release of information regarding deceased abusers and, therefore, grant relief as to any reporting of the individual misconduct of deceased abusers.

## RELEVANT BACKGROUND

This original action seeks to prohibit enforcement of an order entered by Senior Judge Potter, directing the Settlement Master in class-action litigation to report to the appropriate Commonwealth Attorneys comprehensive information regarding criminal conduct which came to light in the course of civil proceedings. Plaintiffs in the underlying action brought suit against the Roman Catholic Diocese of Covington, Kentucky ("the Diocese") and its Bishop for injuries they suffered after being sexu-

ally abused as children by priests or other employees of the Diocese. Shortly after the filing of the complaint in February 2003, the individual plaintiffs (who later became Class representatives) and others who joined the litigation were permitted to proceed anonymously through the use of pseudonyms. No individual priests or other diocesan employees were named as defendants.[2] On October 21, 2003, Senior Judge Potter's predecessor entered an order certifying the litigation as a class action. Senior Judge Potter was assigned as Special Judge and began presiding over the litigation on December 19, 2003.

In May 2005, the parties reached a settlement which was submitted to the court for approval, along with a proposed plan for publication of notice of the class action settlement and a request to schedule a fairness hearing prior to final approval. In July 2005, the trial court preliminarily approved the settlement and method of publication, along with a notice which included the following statements regarding confidentiality: "The Court has ordered the parties to keep the identity of Class Members confidential **to the extent reasonably possible.** Names of Class Members are not currently a matter of public record." (emphasis supplied).

The trial court entered an order on March 22, 2006, which reflected the parties' agreement concerning the manner in which the settlement would be administered: "[The parties] agreed that a single settlement master could be appointed who would not only monitor the process but have complete control over, and responsibility for, the conduct of the entire settlement process and that this master would report directly to the Court." In the same order, Senior Judge Potter appointed a

**2.** The original complaint alleges specific instances of abuse but never names the abusers, referring to each only as "Priest".

retired federal judge, Thomas Lambros, as Settlement Master and required him to file written status reports every ninety days. The trial court specifically retained jurisdiction "to supervise and implement the settlement."

The present controversy was precipitated by the entry of a June 21, 2006, *sua sponte* order which required the Settlement Master to report "every act of suspected abuse against a victim who was minor at the time of the abuse of which [the Settlement Master], or any person acting under his direction, became aware as part of the settlement process." The order specified that the report was to contain the nature and extent of the abuse and the location in which it occurred; the name, address, and contact information for the suspected abuser; the name, address and contact information for the abused person (or his parents if the victim was still a minor); any information concerning similar acts of abuse by the same abuser or against the same victim regardless of where that abuse occurred; and any other information which the Settlement Master believed to be useful to a prosecuting authority in deciding whether to prosecute a case or, if necessary, to protect the abused person or others from further abuse. The trial court directed that the report "shall request that the information be kept confidential except as necessary to investigate or prosecute a crime or to protect persons from the suspected abuser." Finally, Senior Judge Potter required the Settlement Master to include in his periodic reports to the court summaries of the abuse reports made to the authorities, reciting the number of incidents reported, the number of abusers involved, the type of abuse involved and the name of the Commonwealth Attorney to whom each report was made.

After the Class moved the court to reconsider this order which they contended would violate the confidentially promised in the settlement agreement, the trial court conducted a hearing in an attempt to determine what had been reported regarding the incidents of abuse for which the $84 million settlement fund had been established. Several facts of particular relevance to this original action were established: 1) no suspected abusers were reported by the Diocese through its reporting procedures as a result of this litigation;[3] 2) no criminal prosecutions involving sexual abuse of minors by priests or other diocesan personnel have occurred since the year 2000; 3) Class counsel could not identify the number of suspected abusers involved in the civil litigation; 4) the class census procedure had collected approximately 350 claims of child sexual abuse ranging from inappropriate touching to repeated instances of rape; and 5) the names of Class members who had sought counseling directly from the Diocese had already been reported to authorities, but without any contact information. After the hearing, the trial court amended the reporting order to the extent that the name of the victim could be replaced by a number where the abuser was deceased.

The trial court granted the Class's request to stay the effectiveness of the order until appellate relief could be sought by way of an original action. This Court then granted emergency relief to preserve the status quo until oral argument could be heard on the matters asserted in the Class's petition. This Court also concluded that the Commonwealth was an appropriate real party in interest under CR 76.36(8) and gave the Attorney General an opportunity to file a response on behalf of

---

**3.** Some abusers had been reported previously and others have not been reported and will not be until conclusion of the settlement process.

the Commonwealth and to participate in oral argument.

In its petition for relief, the Class argues that the trial court was without jurisdiction to order reports to the Commonwealth Attorneys. In the alternative, the Class insists that even if he possessed the requisite jurisdiction to order the Settlement Master to make the reports, Senior Judge Potter was acting erroneously within his jurisdiction and that the Class members would suffer irreparable injury, with no adequate remedy by appeal, if their identities were disclosed to prosecutors. The Class maintains *inter alia* that there is no statutory or other legal basis for the reports and that the reports place a "heavy economic burden" on the settlement fund to the detriment of the Class.

Senior Judge Potter has filed responses positing that the settlement process, even though administered through a Special Master, remains a part of the court process and thus a trial judge has the ability, if not the responsibility, to report crimes uncovered as part of that process. He also argues that to deprive prosecutors of the information in a meaningful form would impede effective decisions as to whether to prosecute a particular abuser. Without the information ordered divulged in the Settlement Master's reports, Senior Judge Potter asserts there would be no further reporting of abusers if they had previously been the subject of reporting in whatever manner the Diocese had selected. He maintains that to withhold the identities of the abuse victims from prosecutors serves to further dilute the effectiveness of any self-reporting which has been undertaken by the Diocese.

The Attorney General filed a response on behalf of the Commonwealth and participated in the oral argument conducted on October 11, 2006, suggesting that current reporting practices provide adequate information to the local prosecutors without divulging the additional personal information addressed in the trial court's order.

**PETITIONERS HAVE ESTABLISHED ENTITLEMENT TO LIMITED RELIEF FROM THE TRIAL COURT'S ORDER REQUIRING REPORTS TO COMMONWEALTH ATTORNEYS**

Before turning to the applicable law, it is important to identify the scope of the relief sought by the Class. Although the Class states at one point in the petition for relief that the petition is directed solely to those portions of the challenged order which require the release of victims' names and addresses, the bulk of the petition and counsel's oral argument were directed to the trial court's authority to order *any* reporting to Commonwealth Attorneys. Consequently, the Class's request for relief is properly construed as directed at the trial court's order in its entirety.

In *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004), the Kentucky Supreme Court prescribes the standard for granting relief by way of original action.

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

■ In the context of a petition for a writ of prohibition under CR 76.36, jurisdiction connotes "subject matter jurisdiction." *Petrey v. Cain*, 987 S.W.2d 786, 788 (Ky.1999); *Preston v. Meigs*, 464 S.W.2d 271, 275 (Ky.1971). There is no question that the underlying action, *John Doe v.*

*Roman Catholic Diocese of Covington,* is within the subject matter jurisdiction of the circuit court. Moreover, the case remains active on the Boone Circuit Court docket and the trial judge has expressly retained jurisdiction to supervise and implement the settlement. Senior Judge Potter clearly did not act outside his jurisdiction in issuing the *sua sponte* order.

▮ Having concluded that Senior Judge Potter was not acting outside his jurisdiction, the next inquiry is whether he acted within his jurisdiction but erroneously. First, the John Doe Class argues that the judge unilaterally, and thus improperly, modified the parties' settlement agreement. Although the Class maintains that this modification constitutes "acting outside his jurisdiction", their position is not consistent with Kentucky law regarding the meaning of "jurisdiction" in the context of a writ. Unauthorized, unilateral modification of a class action settlement by a trial judge is more appropriately addressed as error. As the Class notes, the United States Supreme Court has construed Federal Rule of Civil Procedure 23(e) as precluding judges from "requir[ing] the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.,* 475 U.S. 717, 727, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). Although Kentucky's version of Rule 23 does not mirror the federal rule, it is unnecessary to address the differences in language because even if Kentucky courts were operating under the identical strictures, the trial court did not modify the settlement terms or rewrite the agreement reached by the parties. The challenged order did not change any of the rights and obligations of the parties to the civil settlement, but instead provided for the reporting of criminal conduct to prosecutors. The only provision of the parties' settlement process even implicated by the reports is the representation that: "The court has ordered the parties to keep the identity of Class Members confidential **to the extent reasonably possible.** Names of Class Members are not currently a matter of public record." (emphasis supplied). Clearly, the settlement process itself was not premised on absolute confidentiality. While representations regarding confidentiality "to the extent possible" are certainly relevant to the irreparable injury inquiry, they do not support a conclusion that the trial court erred in ordering that criminal conduct be reported to prosecutors.

The Class further maintains that Senior Judge Potter erred because he had no statutory or other legal basis for ordering reports to the Commonwealth Attorneys. While KRS 620.030 mandates the reporting of the dependency, neglect or abuse of a child, it has no application to reports regarding adults who were abused as children. Indeed, no Kentucky statute requires the reporting of such past abuse, but the absence of a reporting statute is not dispositive. As counsel for the Attorney General has noted, the inherent power of the court certainly includes authority for reporting to prosecutors wide-scale criminal conduct which has formed the basis for a multi-million dollar class action recovery. Significantly, the specific type of criminal conduct at issue here, sexual abuse, is the only felony conduct which has prompted the Kentucky General Assembly to pass legislation (1) requiring convicted offenders to register with local probation and parole offices (for ten years or life depending on the severity of the crime) and (2) limiting where convicted offenders can reside. *See* KRS 17.500 *et seq.* ("The Sex Offender Registration Act"); KRS 17.495 (prohibiting registered sex offenders from living near schools, playgrounds and daycare facilities). Given the public interest in identifying, registering and limiting the residence options of sexual offenders (par-

ticularly those who abuse children), it defies reason that a circuit judge would have no authority to report such conduct to prosecutors.

Alternatively, the Class maintains that the Diocese's reporting is adequate. The record contains 15 letters from local counsel for the Diocese referencing abuse of 31 victims identified only by numbers. In all of these letters (written between October 2002 and December 2003), the abuse is described generically as "sexual abuse," with a few references to fondling, groping or similar activities. The cursory letters contain none of the information regarding the type and magnitude of abuse associated with each individual abuser which would come from the court-ordered reports.[4] Would post-settlement reports from the Diocese contain the type of detailed information which justifies civil damage settlements and would prompt prosecution? The trial court had no way of knowing the answer to that question. However, without his order, the Diocese, the primary defendant in the underlying action, would be self-reporting in accordance with its own protocol without any oversight by any outside party. If employees of a private school, YMCA day camp or community center had sexually abused hundreds of children, no one would suggest that the institution itself simply self-report. The Catholic Church, like other religious bodies, occupies a unique and cherished position in our society, but it is not entitled to any special deference in the reporting of criminal conduct. In sum, the trial court did not err in ultimately concluding that detailed reports of repeated incidents of sexual abuse by priests and other employees of the Diocese should be made by the Settlement Master and not left to the Diocese itself.

Moreover, the fact that Commonwealth Attorneys (none of whom currently have the comprehensive information the court-ordered reports would provide) have not yet, but could eventually, subpoena the information is really irrelevant. This original action is not about possible avenues of access to the information accumulated in the underlying civil action, but rather it is about a trial judge's authority to order the reporting of criminal conduct.

The Class also maintains that Senior Judge Potter has breached a fiduciary duty to the Class and violated their respective individual rights of privacy. The fiduciary duty contention is based on a federal class action wherein the Eighth Circuit Court of Appeals held that a trial judge "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 932 (8th Cir.2005). The present controversy does not involve protection of the rights of absent Class members and this Court finds no legal basis for holding that Senior Judge Potter has breached any duty he may have had to Class members.

As for the individual Class members' constitutional right to privacy, this Court need not consider the full parameters of that right because, to the extent Class members have invoked the civil process of Kentucky courts to secure monetary relief, they appear to have waived any right to preclude the court from reporting to prosecutors the crimes against the Commonwealth which formed the basis of their civil recovery. Reporting of the underlying criminal conduct, however, does not necessarily extend to the wholesale reporting of

---

4. There are no reports of rape and sodomy, conduct which qualifies for Abuse Category 4 under the settlement, a category which Senior Judge Potter "assumed ... the parties created ... because they believed some class members will fall into it."

victims' names and addresses and, on that point we find that the trial court erred.

While Class counsel has repeatedly questioned the judge's motive in entering the reporting order, it is patently obvious that it was designed to serve the compelling public interest in assuring that child sexual abuse is fully reported to prosecuting authorities. Thus, the trial court's order must be viewed in the context of the important public interest it was designed to serve.

■ As Class counsel notes, it is possible that even when armed with detailed information regarding an individual abuser's criminal conduct a prosecutor, in the exercise of his or her discretion, may decline to prosecute. The prosecutor may determine that the abuser is not mentally competent to stand trial or that the particulars of the case render successful prosecution unlikely. In those cases where the prosecutor does decide to proceed, there may be numerous victims who are willing to be identified and to meet with the appropriate Commonwealth Attorney. Many individuals who were abused by priests as children have stepped forward in this state and across the country to assist prosecutors in securing convictions of the abusers and in preventing the abusers' access to future child victims. Undoubtedly some members of the John Doe Class will do likewise, rendering it unnecessary for every single victim to be identified. Given these circumstances and credible evidence that some (but certainly not all) Class members may be irreparably harmed by disclosure of their names to prosecutors, we grant relief to the extent that the reporting order requires immediate disclosure of all victims' names and contact information. Whether this information should be produced to a Commonwealth Attorney who deems it crucial to a planned prosecution, over the objections of the in-

dividual whose name is sought, is an issue which may never arise but, if so, it must be addressed when ripe for consideration. Finally, because information regarding the individual conduct of deceased abusers cannot serve the compelling public interest in the reporting and prosecution of child sexual abuse, we agree with Class members that the trial court erred in ordering the reporting of any information pertaining to deceased priests or employees of the Diocese.

In closing, we note that the Class members predicated their request for relief in part on the cost of the required reporting, a position which was not fully developed and which we view with some skepticism given the $84 million fund created by the Diocese and its insurance carrier. Obviously the reports will require some time to prepare but the information required by the trial court's order is all readily available to the Settlement Master and his staff as a result of the claims process. In essence, the reporting order requires an executive summary of the credible incidents of abuse established as to each abuser. Because it requires information regarding all of an individual abuser's acts, a reasonable construction of the order would allow the Settlement Master to render one comprehensive report on each abuser to all affected jurisdictions at the conclusion of processing of all claims against that specific individual. This reasonable construction of the order avoids piecemeal reports and unnecessary expense.

## ORDER

**IT IS HEREBY ORDERED** that the Petition for Relief Under CR 76.36 and CR 81 shall be granted to the extent that the Settlement Master shall not be required to report the names and addresses of victims at this time, nor shall he be required to report the incidents of abuse perpetrated

by priests or Diocese employees who are now deceased. In all other respects, the trial court's order shall remain in full force and effect.

HENRY, Judge, concurs.

KNOPF, Senior Judge, concurs and files separate opinion.

KNOPF, Senior Judge, concurring:

While I fully concur in the result and reasoning in our ruling on the writ, I write separately to emphasize my belief that the very serious public interest issues articulated in our opinion have been occasioned solely by the fact that this litigation was improperly allowed to proceed anonymously from the outset. Although Class counsel cites caselaw from other jurisdictions purporting to establish a right to proceed by use of pseudonyms, the majority of the cited foreign cases, many of which refused to allow the use of pseudonyms, are distinguishable. I find no Kentucky authority by statute, rule or caselaw, supporting the proposition that litigants may proceed anonymously in this type of case.

To be sure, there are certain peculiarly private individual matters in which parties have been allowed to proceed anonymously. However, those cases are based almost exclusively upon the existence of factors which substantially outweigh the "customary and constitutionally-embedded presumption of openness in judicial proceedings."[5] Cases which have been found to meet that criterion include challenges to legislation such as the abortion statutes, litigation to compel one's insurance company to pay for particularly private procedures, and cases involving purely legal issues in which there is an atypically weak public interest in knowing the identities of the litigants. It is clear to me that the heinous and criminal nature of the conduct alleged in this litigation, as well as the positions of trust occupied by the alleged abusers, overwhelmingly tips the balance in favor of public disclosure.

As we have painstakingly outlined, this litigation is predicated upon allegations of sexual misconduct against more than 300 children by Catholic priests and further misconduct by the priests' superiors which allowed the priests' misconduct to continue. I can conceive of no scenario involving greater public interest and concern, not only in terms of discerning the factual accuracy of the allegations but in protecting potential victims from future abuse.

Although the Class claims a right to anonymity based upon the embarrassing nature of the crimes perpetrated against them, potential for embarrassment standing alone cannot justify anonymity. For example, many victims of workplace sexual harassment are exposed to embarrassment, ridicule and even discrimination in their employment if they choose to seek redress through litigation. I am thus convinced that the concerns of a few of the individual Class members in this litigation, while significant, do not outweigh the obvious and imperative need for openness in this type of case. Individuals utilizing the courts of this Commonwealth to level charges of this nature should be prepared to stand behind those charges publicly. If this litigation had not proceeded in secret, Senior Judge Potter would not have found it necessary to initiate a procedure for bringing to light criminal acts which have so far escaped public scrutiny.

---

5.  *Doe v. Frank,* 951 F.2d 320, 323 (11th Cir. 1992), citing *Doe v. Stegall,* 653 F.2d 180 (5th Cir.1981).